UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3674 |
| | § | |
| ALBERT FASE KALETA and | § | |
| KALETA CAPITAL MANAGEMENT, | § | |
| *et al.*, | § | |
| Defendants, | § | |
| | § | |
| BUSINESSRADIO NETWORK, L.P. | § | |
| /d/b/a BizRadio and DANIEL | § | |
| FRISHBERG FINANCIAL SERVICES, | § | |
| INC., d/b/a DFFS CAPITAL | § | |
| MANAGEMENT, INC., | § | |
| Relief Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

The Court has before it two motions.  The first is a Motion to Approve Settlement Regarding Certain Insurance Proceeds [Doc. # 234] ("Insurance Settlement Motion") filed by the Court-appointed receiver, Thomas L. Taylor, III (the "Receiver"), to which Daniel S. Frishberg and Elisea Firshberg, *pro se*, object [Doc. # 238].[1]  The second is the Receiver's Motion to Approve Settlement with Albert F. Kaleta ("Kaleta Settlement Motion") [Doc. # 235] to which no objections have been filed.

---

[1]     The Receiver has filed a Response [Doc. # 239] ("Reply") to the Frishbergs' Objection.

## I.   BACKGROUND

By way of overview, in the Insurance Settlement Motion, the Receiver seeks approval of a settlement agreement[2] between the Receiver and American International Specialty Lines Insurance Company; Chartis, Inc.; Chartis Claims, Inc.; and American International Companies (collectively, the "Insurance Company") regarding the remaining proceeds of an errors and omissions insurance policy purchased by DFFS (the "Policy")[3] relating to claims against BusinessRadio Network, L.P. ("BizRadio"), Daniel Frishberg Financial Services, Inc. ("DFFS"), and all entities they own or control (the "Receivership Entities").   The Receiver further moves the Court to approve the proposed plan for the allocation of the Insurance Settlement proceeds among the Receivership Estate and the fourteen parties who made timely claims against the "Policy Claimants."[4]

In his second Motion, the Receiver seeks to settle his claims against Alfred Fase Kaleta ("Kaleta"), a principal in two or more of the Receivership Entities.  The Court will discuss the Kaleta claims and the related issues separately.

## II.   INSURANCE SETTLEMENT

### A.   The Receivership

According to the Securities and Exchange Commission ("SEC") pleadings, Albert Kaleta ("Kaleta"), Daniel Frishberg ("Frishberg"), and Kaleta Capital Management ("KCM") allegedly perpetrated several frauds related to promissory-note

---

[2]   *See* Exhibit 1 to Insurance Settlement Motion [Doc. # 234-1] (the "Insurance Settlement").

[3]   Exhibit 5 to Insurance Settlement Motion [Doc. # 234-5].

[4]   The Policy Claimants are Barbara Doreen House, David Selter (and his wife, Joanne Cassidy), Phillip Jones (and his wife, Alissa Jones), Steve Cook, John Dosier, Ronald Ellisor, Ed Gray, Glenn Latta, Doug Shaffer, Kohur Subramanien, Blake Taylor, the Roger Taylor Trust, Paul Williams, and Morris Wolf.

securities.  In one such scheme, these individuals and entities solicited investors, to make loans to various entities related to a radio station (collectively, "BizRadio").  On November 13, 2009, the SEC commenced an enforcement action against Kaleta, Frishberg, and KCM, captioned *SEC v. Kaleta, et al.*, No. 4:09-cv-3674, alleging violations of the anti-fraud provisions of the federal securities laws.[5]  The Court appointed Taylor as receiver over KCM on December 2, 2009.  On June 17, 2010 the Court expanded the Receivership Estate to include "Relief Defendants" BizRadio and DFFS.[6]

Under the Court's orders, the Receiver is authorized: (1) to take and have complete and exclusive control, possession, and custody of the Receivership Estate;[7] (2) to collect all sums of money due or owing to the Receivership Estate; (3) to institute actions to obtain possession and/or recover judgment with respect to persons

---

[5]  The SEC subsequently filed an additional enforcement action against others. *See SEC v. Wallace, et al.*, No. 4:11-cv-1932 (S.D. Tex. May 25, 2011).  Agreed Final Judgments were entered against Wallace and Bajjali individually, permanently enjoining each from future violations of section 17(a) of the Securities Act of 1933 and imposing on each a civil penalty of $60,000.  *See* Docs. # 5 and # 6 in *SEC v. Wallace, et al.*

[6]  *See* Docs. # 7 and # 34.

[7]  The "Receivership Estate" consists of the Receivership Assets and the Receivership Records.  Agreed Order Appointing Receiver ("Order Appointing Receiver") [Doc. # 7], ¶ 2.  "Receivership Assets" are "the assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities), of the Defendant and all entities it owns or controls."  *Id.* ¶ 1; Order Modifying Order Appointing Receiver [Doc. # 34], at 1-2.  "Receivership Records" are "the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers telephones, personal digital devices and other informational resources of or in possession of the Defendant, or issued by Defendant and in possession of any agent or employee of the Defendant."  Receiver Order, ¶ 1; Modified Receiver Order, at 2.

or entities who received assets traceable to the Receivership Estate; (4) to contract and negotiate with any claimants against the Receivership for purposes of compromising or settling any claim; (5) to institute, prosecute, or compromise such actions that the Receiver deems necessary and advisable to carry out the Receiver's mandate; and (6) to preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement to claimants.[8]

On March 25, 2011, the Commission commenced the action styled *SEC v. Daniel Shalom Frishberg*, No. 4:11-cv-1097 (S.D. Tex. Mar. 29, 2011), in the United States District Court for the Southern District of Texas, alleging direct violations and the aiding and abetting of violations of § 206(1) and (2) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6(1), 80b-6(2).  Pursuant to an agreed final judgment, civil penalties were ordered against Frishberg in the amount of $65,000 and Frishberg was permanently enjoined from violating § 206 of the Advisors Act.[9]  Frishberg was also barred from association with any investment adviser pursuant to § 203(f) of the Advisers Act, 15 U.S.C. § 80b-3(f).[10]

### B.    The Insurance Policy

The Policy is an "Investment Management Insurance Policy" issued to "Daniel Frishberg Financial Services Inc. DBA: Frishberg, Jordan & Stewart Advisors" (the "Named Insured")[11] for the period of April 1, 2009 to April 1, 2010 (the "Policy

---

[8]    Order Appointing Receiver, ¶¶ 4, 5(i), 5(j), and *passim.*

[9]    *Id.*

[10]    *See* Order Instituting Administrative Proceedings, SEC Administrative Proceeding File No. 3-14393, Release No. 3206, May 16, 2011.

[11]    There is a discrepancy in the Policy's "Named Insured" (Daniel Frishberg Financial Services Inc. DBA: Frishberg, Jordan & Stewart Advisors) and the named Receivership Entity/Relief Defendant in the Enforcement Action (Daniel Frishberg (continued...)

Period"), having a limit of liability of $1,000,000 available to cover "all Coverages Combined And Including Defense Costs."[12]   Approximately $940,000 remains available under the Policy.[13]

The Policy is a "claims made and reported" policy, covering only those "claims first made . . . and reported in writing to the [Insurance] Company during the Policy Period."[14]  It is an "eroding limits" policy, in which "the limit of liability available to pay judgments or settlements shall be reduced by amounts incurred for defense costs."[15]  Coverage under the Policy extends to "any past, present or future partner, officer, director, trustee or employee of the Named Insured . . . against whom a claim is made in their capacity as such partner, officer, director, trustee or employee" (collectively with the Named Insured, the "Policy Insured").[16]

The Policy contains several potentially pertinent exclusions from coverage, which exclusions the Receiver asserts are material to his fairness assessment of the Insurance Settlement as a whole.  These exclusions include: (1) the exclusion of "any claim arising out of investment in . . . LIMITED PARTNERSHIPS [and] PRIVATE

---

[11]   (...continued)
Financial Services, Inc. d/b/a DFFS Capital Management, Inc.).  For purposes of the Settlement, the parties agree the discrepancy between the two "d/b/a" entities is immaterial.

[12]   *Id.* at 7.

[13]   Approximately $60,000 of the Policy proceeds have been depleted from the total through payment of defense costs incurred prior to the institution of the Receivership Estate.  It is unclear which insureds have benefitted in this regard.  *See* Insurance Motion, at 3 n.6.

[14]   Policy, at 10.

[15]   *Id.* at 7.

[16]   *Id.* at 10.

PLACEMENTS"[17]; (2) "any claim arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute"[18]; and (3) "any claim arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which any [Policy] Insured was not legally entitled."[19]  The Receiver reports that the Insurance Company strongly has invoked these exclusions during settlement negotiations as a basis to deny coverage altogether.  Although the Receiver does not concede the validity of these exclusions, he must—and has—taken them into account.

### C.   Claims Made Against the Policy

On July 24, 2009, Daniel S. Frishberg ("Frishberg"), Elisea Frishberg ("Mrs. Frishberg" and, together, the "Frishbergs"), DFFS and others were sued in a lawsuit styled *Barbara Doreen House v. Daniel Frishberg a/k/a "The Money Man"; Elisea T. Frishberg d/b/a Frishberg, Jordan, Stewart & Kaleta Advisors; Daniel Frishberg Financial Services, Inc. d/b/a Frishberg & Kaleta Advisors; Frishberg & Jordan Advisors; Albert Kaleta; BusinessRadio Partners, LP; BusinessRadio Partners Dallas, LP; BusinessRadio Partners Houston, LP; BusinessRadio, Inc.; BusinessRadio Network, LP; and BusinessRadio Network GP, LLC*, No. 46559 (234th Judicial District, Harris County, Tex. July 24, 2009) (the "*House* Lawsuit").  On March 9, 2010, Frishberg was sued in a lawsuit styled *David A. Selter and Joanne M. Cassidy v. Daniel Frishberg*, No. 15157 (270th Judicial District, Harris County, Tex. Mar. 9, 2010) (the "*Selter* Lawsuit").  Damages alleged on the face of the pleadings in these two suits total $1,850,000.  The two suits have been stayed by this Court in

---

[17]    Policy, at 28 (Endorsement # 5).

[18]    *Id.* at 29.

[19]    *Id.*

order to preserve the *status quo* and the assets of the Receivership Estate.

The Frishbergs have demanded insurance coverage under the Policy for the *House* and *Selter* Lawsuits, apparently seeking reimbursement of defense costs and indemnity.  In March 2010, counsel for DFFS and the Frishbergs sent a notice of claims letter to the Insurance Company[20] identifying an additional twelve (12) claimants alleging wrongful acts in the rendering of or failure to render "Investment Advisory Services" by DFFS.  These additional twelve claims total approximately $14,400,000.[21]  Thus, there are in excess of $15,000,000 in third-party claims against the Frishbergs, DFFS, and others.

Due to the multiple claims against the Policy Insureds by Policy Claimants totaling more than fifteen times the $1,000,000 Policy limit, the Receiver, as Receiver for the Policy's Named Insured DFFS, has made demand on the Insurance Company to tender the balance of the Policy to the Receivership Estate so that it may be distributed ratably for the benefit of the Receivership Estate and investors/claimants.

The Receiver contends that the Policy is an asset of the Receivership Estate, and therefore equity requires the Receiver to attempt to avoid the Policy being diminished to fund the defense of the Policy Injureds.  The Receiver instead has negotiated to make the funds available through settlement for distribution to harmed investors, who are claimants in the Receivership Estate.

### D.     Settlement Terms with the Insurance Company

On behalf of the Receivership Estate and all persons who have substantive claims against that Estate, including the Policy Claimants, the Receiver has entered

---

[20]     *See* Exhibit 3 to Insurance Motion [Doc. # 234-6].

[21]     These are the only persons or entities that have made valid and timely claims under the Policy due to misconduct alleged against DFFS or its past or present partners, officers, directors, trustees, or employees.

into the proposed Insurance Settlement with the Insurance Company. The essential terms of that Settlement are:

(1)     the Insurance Company will pay to the Receivership Estate $800,000 of the remaining Policy proceeds;

(2)     The Receiver will fully release the Insurance Company from any and all claims which could be asserted by him on behalf of the Receivership Estate or the Receivership Entities against it or the Policy;

(3)     the Insurance Company will fully release the Receiver, the Receivership Estate, and the Receivership Entities from any and all claims which could be asserted by it against them; and

(4)     The Receiver will seek entry of the proposed final claim bar order (the "Bar Order")[22] enjoining all persons from in any manner taking any adverse action against the Insurance Company and/or the Policy, including by commencing or continuing any legal proceeding and/or asserting or prosecuting any cause of action against the Insurance Company or Policy arising out of the Investments (as defined in the Settlement Agreement) or arising out of any advice, recommendation, opinion or act by any Policy Insured in providing "Investment Advisory Services" for others as defined in the Policy. The Settlement Agreement is conditioned upon entry of such Order.[23]

The Receiver urges that the Court approve the proposed Insurance Settlement as fair, equitable, reasonable, and in the best interests of the Receivership Estate and all who could claim substantive rights to distribution of Estate assets. Plaintiff SEC does not oppose this motion.[24]

---

[22]     Exhibit B to the Settlement Agreement [Doc. # 234-4].

[23]     Insurance Settlement Motion, at 6-7.

[24]     The Receiver has served copies of his Motions and the proposed settlements on all interested persons and entities, including those he seeks to be bound by the proposed Bar Order. *See* Exhibit C to Insurance Settlement Motion (list of those served).

### E.   Proposed Distribution of Settlement Proceeds

The Receiver explains that the Receivership Estate, on behalf of investors who did not make timely claims against the Policy, and the Policy Claimants all hold relevant claims to the Settlement proceeds.  Because the Policy Claimants are the only parties to make timely claims on the Policy, however, the Receiver urges that it would be equitable to distribute the majority of the Insurance Settlement proceeds to them at this time on a *pro rata* basis.

The Receiver proposes that the Receivership Estate retain $100,000 of the $800,000 in Insurance Settlement proceeds.  The Receiver proposes to distribute the remaining $700,000 to the Policy Claimants on a *pro rata* basis, based on net out-of-pocket losses sustained by those Policy Claimants in investments made pursuant to their client-advisor relationship with DFFS.  Distributions to the Policy Claimants would be attributed to their claims against the Receivership Estate, and the Policy Claimants would not receive any additional distributions **unless and until** distributions to all other valid claimants against the Estate reached the same level of recovery with respect to net out-of-pockets losses on a *pro rata* basis.  At this time, it appears the Settlement proceeds distributed to the Policy Claimants would equal approximately 4.5% of the net out-of-pocket losses they respectively sustained from investments through DFFS.  This distribution of Settlement proceeds to the Policy Claimants would be subject to proof of their claims, namely that the investments in question were in fact purchased through DFFS or the other Policy Insureds under the Policy, and other proof in regard to any payments of interest or otherwise received by them on those investments.

### F.   Analysis of Insurance Settlement

#### 1.   Financial Aspects of the Insurance Settlement

There is no doubt that the Receiver clearly has authority to negotiate and enter

into settlements in cases in which the Receiver is involved on behalf of the Receivership.[25]   The Receiver also has a duty to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants."[26]

The Receiver explains that the proposed Insurance Settlement is the result of protracted negotiations between the Insurance Company and the Receiver.  The Receiver submits that the Insurance Settlement is both fair and equitable to the Receivership Estate and all persons who have substantive claims against the Receivership Estate, as well as to the Insurance Company.  The Insurance Settlement, according to the Receiver, also takes into account the duty to minimize expenses of the Receivership Estate.

In assessing the proposed Insurance Settlement, the Receiver states that he has analyzed:

(a)    the Insurance Settlement amount as a percentage of the remaining Policy amount;

(b)    the claims against the Policy of the Receivership Estate and the Policy Claimants;

(c)    the reservation of rights by the Insurance Company with regard to the claims made against the Policy and the Policy Insureds; and

(d)    the expense of litigation over rights to the Policy proceeds and the likelihood of success in such litigation.

As noted, the remaining amount of coverage available under the Policy is approximately $940,000.   As noted, the Insurance Company in the Insurance

---

[25]    *See supra* at pp. 3-4.

[26]    Order Appointing Receiver, ¶ 5(j).

Settlement would pay the Receivership Estate a total of $800,000, approximately 85% of the remaining Policy amount.

There are fourteen claimants with claims totaling more than $15,000,000, against only approximately $940,000 remaining Policy proceeds.[27]  The Receiver reports that he believes that the Policy Claimants' claims against DFFS and its former officers are valid.  However, the Insurance Company has raised significant Policy coverage issues as to the scope of coverage for DFFS and its former partners, officers, directors, or employees, as well as several significant Policy exclusions, including claims relating to investments in limited partnerships and private placements, claims based upon the deliberate commitment of fraudulent acts, and claims based upon the illegal gaining of profit or advantage by a Policy Insured.[28]  The Insurance Company reportedly intends to defend vigorously against the Receiver's claims for coverage. While these coverage questions would have to be determined as a matter of law in the Enforcement Action or in separate declaratory judgment litigation, the *Selter* and *House* Lawsuits against the Frishbergs contain allegations that easily could be construed to fall within these precise Policy exclusions.  Thus, the coverage litigation would be complex, fact intensive, time-consuming, and risky for the Estate. Furthermore, both the Policy Insureds and the Receiver may be necessary parties to any insurance coverage litigation, making that litigation complicated and expensive. There, accordingly, exists the likelihood that the coverage would be limited, and there is a possibility that no indemnification payments under the Policy would be obtained by the Receivership Estate for these claims.

---

[27]     *See* Insurance Settlement Motion, at 5, 10.

[28]     *See also* Policy Endorsements # 5 and # 6 [Doc. # 234-5], at 28, 29.

The Insurance Settlement allows for immediate and significant value to be obtained by the Estate from the Policy.  Further, the Settlement will directly benefit the Frishbergs by reducing their potentially non-covered liability to the Policy Claimants.

The Settlement also will allow Policy proceeds to be distributed to claimants without the delay and cost associated with determining the extent of the Insurance Company's asserted exclusions.  The Court concludes that the proposed distribution arrangement effectively provides an equitable division of the insurance proceeds given the Policy Claimants' timely assertion of the claims presented at this time.[29]

Due to the risks inherent in litigation, the expenses that would likely result from protracted litigation, and the limited resources of the Receivership Estate, the Court agrees with the Receiver's conclusion that it is in the best interest of the Receivership

---

[29]   There is no specific objection to the Insurance Settlement distribution of the Policy proceeds as proposed by the Receiver.  But to the extent the Frishbergs' Objection could be construed as such, the Court provides the following analysis.  The Fifth Circuit has held that fraud victims in a common scheme are in equal positions and should be treated equally through a *pro rata* distribution of assets.  *See, e.g., U.S. v. Durham*, 86 F.3d 70, 72-73 (5th Cir. 1999); *SEC v. Forex Asset Mgmt.*, 242 F.3d 325, 331-32 (5th Cir. 2001); *see also United States v. 13328 & 13324 State Highway 75 N.*, 89 F.3d 551, 553 (9th Cir. 1996) (affirming *pro rata* distribution even though majority of funds were traceable to specific claimants); *U.S. v. Vanguard Inv. Co.*, 6 F.3d 222, 224 (4th Cir. 1993) (affirming *pro rata* distribution despite investor tracing transfer of a parcel of real property to defrauder's estate); *SEC v. Elliot*, 953 F.2d 1560, 1568-69 (11th Cir. 1992) (upholding *pro rata* distribution despite tracing of securities transferred to defrauder ); *U.S. CFTC v. PrivateFX Global One, Ltd.*, 778 F. Supp. 2d 775, 783-84 (S.D. Tex. 2011); Memorandum and Order [Doc. # 170], *SEC v. Kaleta*, No. 4:09-cv-3674, 2012 U.S. Dist. LEXIS 14880, at *28 (S.D. Tex. Feb. 7, 2012) ("In cases where investors are similarly defrauded, equity favors treating them alike."); Memorandum and Order [Doc. # 156], *SEC v. Kaleta*, No. 4:09-cv-03674, 2011 U.S. Dist. LEXIS 138963, at *22 (S.D. Tex. Dec. 2, 2011) (adopting the reasoning of *Durham, Forex*, and *PrivateFX* regarding equal treatment of investors); *SEC v. Amerifirst Funding, Inc.*, No. 07-cv-1188, 2008 WL 919546, at *2-5 (N.D. Tex. Mar. 13, 2008) (the absence of commingling between various receivership entities does not render a pooled, *pro rata* distribution inequitable).

Estate to avoid litigation with the Insurance Company in exchange for 85% of the remaining Policy proceeds.  The financial aspects of the Insurance Settlement are fair, equitable,  reasonable, and in the best interests of the Receivership Estate.

### 2.    The Bar Order

A potentially more controversial aspect of the Insurance Settlement is the entry of a Bar Order, which the Receiver states is a necessary condition to the consummation of the Insurance Settlement.[30]  The Bar Order enjoins all persons from taking any adverse action in any manner against the Insurance Company and/or the Policy, including by commencing or continuing any legal proceeding and/or asserting or prosecuting any cause of action against the Insurance Company or Policy arising out of the "Investments"[31] or arising out of any advice, recommendation, opinion, or act by any Policy Insured (such as the Frishbergs) in providing "Investment Advisory Services" for others as defined in the Policy.

The Receiver has committed to the Insurance Company that he would support before this Court the proposed Bar Order as a requirement of the Insurance Settlement because the Insurance Company seeks "to buy full and final peace" through the Settlement. The Receiver urges that the Insurance Company's willingness to pay a very high proportion—approximately 85%—of the remaining Policy proceeds is

---

[30]     *See, e.g.*, Insurance Motion, at 12; Reply at 7.

[31]     As defined in the Insurance Settlement Agreement and Bar Order, the "Investments" are "those series of transactions in which persons or entities, at the encouragement and direction of the Policy Insureds and others related to them, placed their money in the care of the Policy Insureds which were then funneled into various companies allegedly owned and/or controlled, directly or indirectly, by the Policy Insureds including BusinessRadio Network, L.P., KCM and/or Wallace Bajjali limited partnerships which then loaned the monies back into Policy Insured controlled businesses or exchange for the payment in the Insurance Settlement, the Court should release the Insurance Company from any  obligations arising under the Policy had a financial interest."  Insurance Settlement, ¶ 2.12.

dependent on obtaining the Bar Order.  In Receiver's opinion, the proposed Insurance Settlement, including the Bar Order, offers the best and most economical solution for carrying  out this mandate.  It is likely that legal costs related to litigation over the Policy would exceed the remaining balance of the Policy not turned over in settlement, or result in exclusions from coverage on the Policy reducing the indemnification amount under the Policy to less than the Insurance Settlement amount.

Federal courts have inherent equitable authority to issue a variety of ancillary relief in actions brought by the SEC to enforce the federal securities laws.[32]  District courts have "broad powers  and wide discretion" in determining appropriate relief in an equity receivership.[33]

Blanket anti-litigation stays repeatedly have been upheld in circumstances affecting assets of a receivership estate by courts exercising their broad equitable authority.[34]  A district court has authority to assert control over property and issue such injunctions when "the subject matter of the two suits is different or the jurisdiction is not concurrent . . . where . . . [a] state court has not [previously] taken

---

[32]    Memorandum and Order [Doc. # 170], *SEC v. Kaleta*, No. 4:09-cv-3674, 2012 U.S. Dist. LEXIS 14880, at *16-18 (S.D. Tex. Feb. 7, 2012) (citing *SEC v. Wencke*, 622 F.2d 1363, 1368-69 (9th Cir. 1980) ("*Wencke II*"); *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982)).

[33]    *Safety Fin. Serv.*, 674 F.2d at 373 (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).  It is noted that the plaintiffs in the *Selter* and *House* Lawsuits have not filed any objections to the Insurance Settlement.

[34]    *See, e.g.*, SEC v. Byers, 609 F.3d 87, 91 (2d Cir. 2010) (quoting *Wencke II*, 622 F.2d at 1369); *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551-52 (6th Cir. 2006).

actual possession of the property."[35]  In the present case, no state court currently holds constructive possession of the property at issue, and all state court actions have been stayed.[36]

Accordingly, the Court holds that the proposed Bar Order is fair, equitable, reasonable, and in the best interest of the Receivership Estate.

### G.     Analysis of the Frishbergs' Objections to Insurance Settlement

The Frishbergs oppose approval of the Insurance Settlement, contending that, as defendants in a suit by the Receiver, *Taylor v. Frishberg, et al.*, No. 4:12-cv-1491 (S.D. Tex. filed May 10, 2012) (the "Ancillary Action"),[37] they are insureds entitled to reimbursement of the costs of defense and payment of indemnity for liabilities covered by the Policy.[38]  The Frishbergs further argue that the Insurance Company should not be released from any obligations to compensate them for the defense and indemnity costs in their capacities as executives of the insured entities in receivership because the Receiver has not proven that the Frishbergs are liable or that certain Policy exclusions apply.[39]  After careful consideration, the Court finds that these contentions are unpersuasive and the law cited by the Frishbergs is inapposite.

---

[35]    *Wencke II*, 622 F.2d at 1371-72 (emphasis added).

[36]    This Court stayed the *House* and *Selter* lawsuits, and prevented any others from being commenced, the defense of which would have depleted the amounts available under the Policy.  *SEC v. Kaleta* [Doc. # 170], 2012 U.S. Dist. LEXIS 14880, at *16-18 (S.D. Tex. Feb. 7, 2012).

[37]    The Receiver originally filed the Ancillary Action in this Receivership case, Civil Action No. 4:09-3674.  For ease of management of the new matter, however, the Court severed the Ancillary Action from this case and it was docketed as Civil Action No. 4:12-1491.  Cites to the Ancillary Action Complaint are to its original docket number in this Receivership case.

[38]    *See* Objection, at 1-2.  The Frishbergs are represented by counsel.

[39]    *Id.* at 2.

In essence, the Frishbergs object to the Insurance Settlement because they seek defense costs and indemnity for any liability found against them in the Ancillary Action.  The Court finds that the Frishbergs have not established that they would be entitled under the Policy to coverage for claims relating to that Action and thus they have not shown that they are affected by the Insurance Settlement.

First, the Frishbergs have not shown or even alleged that they timely tendered a claim to the Insurance Company on the Policy with respect to the Ancillary Action. The Policy covers only claims made during the Policy period.[40]  Notably, the Ancillary Action, filed August 23, 2011 [Doc. # 105], was commenced after expiration of the "Policy Period" on April 1, 2010.[41]  April 1, 2010, therefore, was the deadline for an insured to report to the Insurance Company a claim for which the insured sought coverage.  The Frishbergs have not shown they did, or could have timely done, so.  They thus fail to establish here even a predicate for coverage under the Policy.

The Frishbergs also have not established that they are entitled to Policy coverage for the claims in the Ancillary Action to the extent the claims relate to the Frishbergs' conduct as officers of BizRadio.[42]  It appears very likely that certain of the

---

[40]     The Policy states that it covers "claims . . . made . . . and reported in writing to the [Insurance] Company during the Policy Period."  Policy, at 10.

[41]     *See id.*

[42]     The Receiver in the Ancillary Action alleges that "[Daniel] Frishberg was the controlling owner, a director and the chief executive officer of both BizRadio and DFFS. His ownership and management responsibilities in both entities extended through all aspects of corporate governance and control, including over his subordinate at both entities, Kaleta.  Kaleta was the sole owner, director and officer of KCM, and was also an owner and officer of both BizRadio and DFFS. Mrs. Frishberg was an officer of BizRadio."   Ancillary Action Complaint [Doc. # 105], ¶ 2. Mrs. Frishberg was alleged to have been an officer of BizRadio who, in that
                                                                              (continued...)

Receiver's claims in the Ancillary Action are excluded from Policy coverage. The Ancillary Action involves claims by the Receiver on behalf of DFFS (which is the "Named Insured" under the Policy) regarding the Frishbergs' conduct, *inter alia*, as officers of Receivership Entity *BizRadio* and, as to Daniel Frishberg, as an officer/director of DFFS. BizRadio is not an Insured under the Policy. The Policy expressly excludes coverage of claims "arising out of any actual or alleged act or omission by . . . an Individual Insured in his capacity as a partner, officer, director, trustee or employee of any other person or entity *other than* [DFFS]."[43] Thus, to the extent the Frishbergs are sued as officers of BizRadio, coverage would likely be excluded. Also, to the extent the Frishbergs claim rights under the Policy as a result of their relationship with DFFS,[44] another Policy exclusion likely precludes coverage because the Receiver's claims are "claim[s] against any Insured [here, the Frishbergs] which is brought by, or on behalf of, or in the right of, any other Insured [here, DFFS] . . . ."[45] Therefore, to the extent the Insurance Settlement redirects Policy proceeds that are then unavailable for coverage for other insureds, the Frishbergs have not established that there is any likelihood that the Policy would in fact provide them a benefit and their objection is at best academic.[46]

---

[42]   (...continued)
capacity, allegedly profited personally. *See, e.g.*, *id.* ¶¶ 2, 52. There are no allegations that she held a position with DFFS.

[43]   Policy [Doc. # 234-5], at 16 (Exclusion II.10) (emphasis added).

[44]   As noted *supra*, it is not apparent from the record that Mrs. Frishberg has any employment or agency relationship with DFFS.

[45]   Policy, at 15 (Exclusion II.7).

[46]   It is noted in passing that the case law cited by the Frishbergs in their Objection is inapposite. The Frishbergs rely on *Employee Casualty Co. v. Tilley*, 496 S.W.2d 552
(continued...)

Third, it appears that, by compensating the Policy Claimants with much of the Policy proceeds and bringing additional proceeds into the Receivership Estate, the Insurance Settlement benefits both the Frishbergs and the Estate. By partially satisfying the claims of those who have filed claims against the Frishbergs, the Insurance Settlement reduces the Claimants' potential damages and thus mitigates the claims against the Frishbergs.[47]

---

[46]     (...continued)
(Tex. 1973), to argue that "whether coverage is lacking under the [P]olicy cannot be litigated in the underlying lawsuit because it would conflict with the interests of the insured." Objection, at 3. *Tilley* does not support the result sought by the Frishbergs here. In *Tilley*, the Texas Supreme Court held that where an insurance carrier has engaged an attorney to represent an insured, that attorney must immediately notify the insured of any conflict of interest which arises between the insurance company and the insured. *Id.* at 558. Such circumstances have not been shown to be present here.

Likewise, the Frishbergs' reliance on *United Service Automobile Association v. Pennington* ("*Pennington*"), 810 S.W.2d 777 (Tex. App.—San Antonio 1991), is unavailing. The *Pennington* court merely reasserted the *Stowers* doctrine, *see G. A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved), "that the insurer [has a duty to] act in good faith and deal fairly with the insured, and to exercise ordinary care and prudence in considering an offer of settlement within the policy limits." *Pennington*, 810 S.W.2d at 783-84 (citations omitted); *see Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994) ("[I]nsurers may be liable for negligently failing to settle within policy limits claims made against their insureds." (citing *Stowers*, 15 S.W.2d at 547-48)). The Frishbergs have not established facts to support a contention of bad faith or unfair dealing, or that the Insurance Company negligently failed to settle claims made by the Policy claimants.

[47]     As noted earlier, even if the Frishbergs had shown they have coverage under the Policy, which they have not done, rejection of the Insurance Settlement would require the Receiver to file suit to assert rights against the Policy and provoke likely expensive, complex litigation, that may well deplete the Policy and thereby reduce further the available proceeds for distribution to Insureds, including possibly the Frishbergs. *See* Insurance Motion, at 11; Reply, at 5, 7. Despite the Frishbergs' contentions, *see* Objection, at 2, the Insurance Settlement may well benefit the Frishbergs to some degree. Policy proceeds distributed by the Receiver to the Policy

(continued...)

Accordingly, the Receivers' assessment that a combination of use of the Insurance Settlement funds and a bar preventing the Frishbergs from seeking recovery under the Policy have been shown to be inseparable parts of a negotiated agreement and are warranted over the Frishbergs' objection.

### H.   Conclusion on Insurance Settlement

The Court concludes that, on balance, the Insurance Settlement terms of $800,000 out of the remaining Policy proceeds, the Settlement funds distribution, and the Bar Order are all necessary to the negotiated Insurance Settlement and, in combination, are warranted under the circumstances.  The Frishbergs' objections to the Insurance Settlement are insufficient to overcome the Court's assessment that the Insurance Settlement is in the best interests of the Receivership Estate, fair, reasonable, and equitable.

## III.   KALETA SETTLEMENT

The Receiver has filed the Kaleta Settlement Motion [Doc. # 235] seeking approval of a proposed settlement of his claims on behalf of the Estate against Albert Fase Kaleta.  The Court turns to that Motion.

### A.   Background

#### 1.   Kaleta Litigation

As noted, after the SEC commenced the above-captioned enforcement case, the Court-appointed Receiver, on August 23, 2011, filed suit against Daniel and Elisea Frishberg, Kaleta, and others, *Taylor v. Frishberg, et al.*, (*i.e.*, the Ancillary Action), Civil Action No. 4:09-3674 [Doc. # 105], later docketed as Civil Action No. 4:12-cv-1491.  The Receiver alleged, *inter alia*, that Defendants breached their

---

[47]     (...continued)
Claimants can be applied to off-set potential judgments resulting from claims against the Frishbergs, if any are covered by the Policy.

fiduciary duties, were negligent, and engaged in fraudulent transfers under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE § 24.001 *et seq.* ("TUFTA"),[48] in dealings involving BizRadio, KCM and/or DFFS.[49]  The Receiver seeks to recover damages suffered by the Receivership Entities and creditors, including defrauded investors.[50]

Kaleta filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Texas on January 26, 2012, for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code, *In re Albert F. and Connie T. Kaleta*, No. 4:12-bk-30558 (Bankr. S.D. Tex. Apr. 3, 2013) (the "Bankruptcy Action").  The Ancillary Action was stayed as to Kaleta by virtue of 11 U.S.C. § 365(a).[51] Thereafter, the Bankruptcy Court ordered the automatic stay be "lifted pursuant to 11

---

[48]     *See* Complaint [Doc. # 150] (also Adversary Proceeding Doc. # 1] brought under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).

[49]     The Receiver also sued third-parties Barrington Financial Advisors, Inc. ("Barrington") as well as its principal William C. Heath.  The case originally was filed as part of the Enforcement Action [Doc. # 105], but the Court severed the Ancillary Action from the main case for administrative reasons.

[50]     Kaleta Settlement Motion, at 7.

[51]     On April 23, 2012, the Receiver commenced an adversary proceeding against Kaleta in the Bankruptcy Court, *Thomas L. Taylor III, Receiver v. Albert Fase Kaleta*, No. 4:12-ad-03209 (Bankr. S.D. Tex. Nov. 6, 2012) (the "Adversary Proceeding"), seeking to determine dischargeability pursuant to 11 U.S.C. § 523.  Shortly thereafter, the Receiver filed Motion for Withdrawal of Reference Pursuant to 11 U.S.C. § 157(d) and FED. R. BANKR. P. 5011(a).  The Bankruptcy Judge, with the agreement of the parties, recommended that the Motion for Withdrawal of Reference to the Bankruptcy Court be granted and this Court did so.  The Adversary Proceeding was restyled *Thomas L. Taylor III, Receiver v. Albert Fase Kaleta*, No. 4:12-cv-2401 (S.D. Tex. Feb. 6, 2013), and is pending before the undersigned.  *See* Adversary Proceeding Docs. # 1, # 4.  On February 6, 2013 this Court issued an Order consolidating the Adversary Action into the lead case, the Enforcement Action.

U.S.C. § 362(d)(l) and ordered that matters may proceed in this Court in all actions against Kaleta.

The Receiver and Kaleta have negotiated a settlement (the "Kaleta Settlement") that the Receiver now proposes the Court approve as fair, equitable, reasonable, and in the best interests of the Receivership Estate. Proper notice has been given and no objections have been filed by any claimants, the SEC, or any other person

### 2.    Proposed Kaleta Settlement Agreement

The Receiver proposes the following terms as a comprehensive settlement with Kaleta:

(1)    Kaleta consents to the entry of a judgment against him in the amount of $1,000,000 (the "Stipulated Judgment");[52]

(2)    Kaleta waives the dischargeability of the Stipulated Judgment in any bankruptcy case in which he is a debtor;

(3)    Kaleta releases the Receivership Estate from any and all claims as of the date of the Settlement Agreement; and

(4)    the Receiver releases Kaleta from any and all claims which the Receivership Estate may hold against him as of the date of the Settlement Agreement.

The Receiver contends that the proposed settlement is fair, equitable, reasonable, and in the best interests of the Receivership Estate and its claimants because the Stipulated Judgment, if approved and entered, will be an asset of the Receivership Estate, the Settlement releases the Estate from any claims by Kaleta, and the Settlement avoids costly and uncertain litigation which, even if successful, would result in a judgment for essentially the same assets being obtained through settlement

---

[52]    Exhibit A to Kaleta Settlement Agreement [Doc. # 235-2].

with very low litigation expense.

### B.    Analysis of the Kaleta Settlement

There is no dispute that the Receiver has authority to enter into the Kaleta Settlement.[53]

In support of the proposed settlement, the Receiver explains that his claims against Kaleta were contested.  The Receiver expected the litigation to be costly in time and resources.  He further stated that the outcome was less than certain. Furthermore, collection of any favorable judgment is currently in doubt.  Kaleta filed for bankruptcy and therefore securing a judgment after trial would likely be a "Pyrrhic victory" that the Receiver estimates would cost the Estate "far more than any materially recoverable amount."[54]

The material terms of the Kaleta Settlement are entry of the Stipulated Judgment in the amount of $1,000,000, as to which Kaleta waives dischargeability in any bankruptcy action in which he is a debtor.  The Receiver and Kaleta will mutually release all claims against each other and the Receivership Estate.  The Stipulated Judgment will be an asset of the Receivership Estate and, although not presently collectable, ensures that the Receiver will be able to execute on the judgment and collect on behalf of the Estate if Kaleta obtains assets in the future.[55]

---

[53]    *See* Order Appointing Receiver, ¶¶ 4, 5(f), 5(g), 5(h), 5(i), 5(j).

[54]    Kaleta Settlement Motion, at 7.

[55]    Section 727(a)(10) of the Bankruptcy Code provides that a court "shall grant the debtor a discharge, unless" it "approves a written waiver of discharge executed by the debtor after the order for relief under this chapter." 11 U.S.C. § 727(a)(10); *see also Lichtenstein v. Barbanel*, 161 F. App'x 461, 465-67 (6th Cir. 2005) (per curiam). The Settlement Agreement is a written waiver of discharge on behalf of the debtor, Kaleta, in regard to the Stipulated Judgment.  It was executed on October 12, 2012, following his bankruptcy.  The wavier is not operative or binding until and unless the Court

(continued...)

No objections have been filed to this proposed settlement.

After careful consideration of the record and applicable law, this Court agrees with the Receiver that the Kaleta Settlement is the best option available to recover assets and maximize the value of the Receivership Estate, while minimizing expenses in recovery of these assets.[56]  The Court accordingly approves the Kaleta Settlement Agreement as fair, equitable,  reasonable, and in the best interests of the Receivership Estate and those who could claim substantive rights to distribution of the Estate's assets.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the Settlement between the Receiver and the Insurance Company is fair, just, and equitable, and overrules the Frishbergs Objections.  The Court also approves the Receiver's proposed distribution of Settlement proceeds.  The Court further concludes that the Settlement between the Receiver and Albert F. Kaleta is fair, just, and equitable.  Both Settlements are in the best interest of the Receivership estate and the claimants for distribution of the Estate's assets.  It is therefore

**ORDERED** that the Receiver's Motion to Approve Settlement Regarding Certain Insurance Proceeds [Doc. # 234] and Motion to Approve Settlement with Albert F. Kaleta [Doc. # 235] are **GRANTED**.  It is further

**ORDERED** that this Memorandum and Order will be filed in Civil Case Nos. 4:09-cv-3674 and 4:12-cv-1491.

SIGNED at Houston, Texas, this   **31st**   day of **May, 2013.**

---

[55]       (...continued)
approves the settlement and enters the Stipulated Judgment.

[56]       *See* Settlement Agreement, § II.1.

Nancy F. Atlas
United States District Judge